**In re FRENCH GARDENS, LTD., a Texas Limited Partnership, Debtor.**

**Bankruptcy No. 85–00742–H3–5.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 27, 1986.

Thad Grundy, Hutcheson & Grundy, Houston, Tex., for Manhattan Sav. Bank; Shirley R. Redwine, Hutcheson & Grundy, Houston, Tex., Cadwalader, Wickersham & Taft, Washington, D.C., of counsel.

Richard L. Fuqua, P.C., Richard L. Fuqua, Houston, Tex., for debtor.

EDWARD J. RYAN, Bankruptcy Judge.

This matter comes before the court on the motion of Manhattan Savings Bank ("Manhattan") for an order imposing sanctions on the debtor, French Gardens, Ltd. ("French Gardens"), its attorney, Craig Cowgill, and J.M. Jayson & Company, Inc. ("Jayson"). Movant urges that French Gardens, Jayson, and Mr. Cowgill filed multiple Chapter 11 cases in bad faith causing Manhattan to have to employ counsel to obtain three separate orders for relief of stay in order to complete its foreclosure on a piece of real property located in Houston, Texas. Manhattan has requested $80,657.80 for costs incurred because of these filings.

### The Background

The Victoria Villa Apartments ("the Apartments") in Houston, Texas, were owned by and were the principal asset of Victoria Villa Apartment Associates ("Vic-

toria Villa"), a Utah limited partnership. Victoria Villa is a Chapter 11 debtor in a case pending before the United States Bankruptcy Court for the District of Utah, Central Division, Bankruptcy No. 82M–03011. On November 16, 1984, the Bankruptcy Court for the District of Utah confirmed Victoria Villa's amended modification of second amended plan of reorganization.

Manhattan held a first lien on the Apartments securing a debt of $2,033,134.96 as of March 1, 1985. It is uncontroverted that the Apartments were vandalized, were in a state of disrepair and deterioration, and were depreciating rapidly.

The claim of French Gardens, a Texas limited partnership, the debtor in this case to an interest in the Apartments was based on an alleged second lien which wrapped around the note held by French Gardens Wrap-Around Associates ("Wrap-Around Associates"), also a limited partnership, as successor to Gaslight Square Apartments ("Gaslight"). This second lien was the sole asset of French Gardens. The note was the sole asset of Wrap-Around Associates. French Gardens and Gaslight participated as parties in interest in the Utah case in negotiations with Manhattan and Victoria Villa with respect to the payment of the debts secured by liens on the Apartments. Both voted for the plan of reorganization which was confirmed on November 19, 1984 (the Confirmed Plan). The Confirmed Plan provided that if Manhattan were not paid by January 31, 1985, an amount in excess of $1.8 million including principal and interest on Manhattan's debt, advances by Manhattan to pay taxes, and Manhattan's attorney's fees, the automatic stay in the Utah case would be terminated as to Manhattan without further notice and Manhattan could schedule and conduct a foreclosure sale of the Apartments on February 5, 1985.

The Confirmed Plan also determined the rights of French Gardens and Gaslight, who were parties to the Utah bankruptcy. It provided that the claims of French Gardens and Gaslight would be treated as one claim because they were closely affiliated entities controlled by Joseph M. Jayson, of Buffalo, New York. Jayson is the general partner of both French Gardens and Gaslight. The Confirmed Plan provided that under no circumstances would French Gardens receive a deed in lieu of foreclosure. French Gardens accepted this plan.

Victoria Villa did not make the payments to Manhattan on or before January 31, 1985, as required by the Confirmed Plan. Victoria Villa advised Manhattan that it had neither the inclination nor the ability to continue to manage the Apartments and to make payments. Therefore, pursuant to the authority granted to it by the Utah Bankruptcy Court, Manhattan gave notice of foreclosure of its lien on the Apartments for February 5, 1985.

French Gardens then had the tenerity to file a Chapter 11 Petition (the Houston Chapter 11 proceedings on February 4, 1985). The automatic stay triggered by the Houston Chapter 11 proceeding, of course, prevented Manhattan from carrying out the foreclosure authorized by the Utah Bankruptcy Courts. Manhattan thus was put to the additional requirement of filing two emergency motions for relief from stay in the Houston Chapter 11 proceeding. One was to permit posting of foreclosure and one to permit foreclosure. An order was entered permitting Manhattan to post notices of foreclosure. Subsequently the court conducted a hearing on March 1, 1985, as a result of which an order was entered authorizing foreclosure.

At the March 1, 1985 hearing, Judge Wheless found that French Gardens presented no evidence that Manhattan was adequately protected. It had shown no equity in the Apartments, nor had it demonstrated that the property was necessary for reorganization.

Foreclosure was again scheduled for March 5, 1985. On March 4, 1985, and consistent with the deliberate course of action, Wrap-Around Associates, purporting to have an interest in the Apartments, filed a Chapter 11 proceeding in Buffalo, New York ("the Buffalo Chapter 11"). Wrap-

Around Associates was not represented in the Houston Chapter 11 proceeding. Its existence was not made known to Manhattan or the court either before or during the hearing on March 1, 1985.

Manhattan and its attorneys were then forced to file an emergency motion for relief of stay in the Buffalo Chapter 11 proceeding. An order granting relief from the stay was entered by the Bankruptcy Court in Buffalo, New York, on March 5, 1985, and Manhattan proceeded with the foreclosure sale on that day.

French Gardens filed a motion to dismiss in the Houston Chapter 11 proceedings on March 27, 1985, stating that the second lien on the Apartments was its sole asset and that there were no remaining assets with which to work out a plan of arrangement with its creditors.

The respondents at this time, in effect, plead that "Hope Springs Eternal" and that they acted in good faith.

*Discussion*

■ A confirmed plan has the effect of a judgment rendered by a district court. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Miller v. Meinhard-Commercial Corp.,* 462 F.2d 358 (5th Cir. 1972). Where the judgment or decree of the federal court determines a right under a federal statute, that decision is final until reversed in an appellate court, or modified or set aside in the court of its rendition. *Stoll v. Gottlieb, supra. Deposit Bank v. Frankfort,* 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276 (1903). Any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine of res judicata. *Meinhard, supra.* Res judicata applies where there is an identity of parties and where the subject matter is the same, "not only to every matter which was offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which might have been offered for that purpose." *Id.*

■ The court in *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984) stated the general rule that the word 'parties' does not refer to formal or paper parties, but to parties in interest, that is, that persons whose interests are properly placed before the court by someone with standing to represent them are bound by the matters determined in the proceeding.

French Gardens and Gaslight, the predecessor in interest of Wrap-Around Associates were parties to the Utah bankruptcy. They accepted the confirmed plan which determined the rights of Manhattan, French Gardens and Gaslight. The Utah court considered French Gardens and Gaslight as one since both were closely affiliated and controlled by Jayson. One reaches that same result under Texas law since a limited partnership acts only through its general partner and the general partner is liable for the actions of the limited partnership. Vernons Ann.Tex.Civ.Stat. arts. 6132a § 10(a), 6132b, § 9(1); *Tomlin v. Ceres Corp.,* 507 F.2d 642 (5th Cir.1975); *Frazier v. Manson,* 484 F.Supp. 449 (D.Tex.1980), aff'd 651 F.2d 1078 (5th Cir. 1981). Therefore, Jayson, French Gardens and Gaslight are one entity for the purposes of this discussion. Wrap-Around Associates as assignee of Gaslight is also bound by the Confirmed Plan since a final judgment is res judicata not only between parties to the earlier lawsuit, but also their privies. *See, Southmark, supra; Meinhard, supra.* French Gardens and Gaslight (and therefore Wrap-Around Associates) participated in the Utah proceedings and by so doing became parties to them, regardless of whether they ever were formally named as such. *Southmark, supra.*

As to the second requirement of res judicata, namely, identity of subject matter or cause of action, the *Southmark* court stated (870, fn. 12) that the Fifth Circuit has adopted the transactional test set forth in section 24 of the Restatement (Second) of Judgments:

When a valid and final judgment rendered in an action extinguishes the plain-

tiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

The claim of French Gardens and Wrap-Around Associates challenged Manhattan's right to foreclose on the Apartments. That claim was extinguished by the Confirmed Plan as were the remedies of those two entities against Manhattan with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Jayson, French Gardens, and Gaslight could have raised any issues, fact or law relating to their interests in the Apartments in the Utah case, but instead voted for the plan of reorganization. Appellants cannot now undo a judicial decree which they had a full opportunity to contest, and chose not to. *Southmark, supra.*

█ A final judgment is conclusive and collateral attacks are not permitted. Though an action may have an independent purpose and may contemplate some other relief, it is a collateral attack if it must in effect overrule a previous judgment. *Mitchell v. Village Creek Drainage District,* 158 F.2d 475 (8th Cir.1946); *Meinhard, supra.*

French Gardens and Wrap-Around Associates have challenged and attempted to overrule the judgment of the Utah court in the Texas and New York bankruptcy courts. The fact that each was brought under a different label in an independent action cannot camouflage its inevitable effect. *Meinhard, supra.* To file a new petition to reinstate the automatic stay is a fraud upon the mortgagee and an affront to the integrity of the court. *In re Bystrek,* 17 B.R. 894 (Bkrtcy E.D.Pa.1982).

In applying Rule 9011 and 28 U.S.C. § 1927 the Seventh Circuit stated: "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. Our court has long treated reckless and intentional conduct as similar." *In re TCI Limited,* 769 F.2d 441, 13 C.B.C. 299 (7th Cir.1985).

The *Eastway* court stated that sanctions should be imposed where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. That court also said that where a claim has no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Bankruptcy Rule 9011 has been violated.

Craig Cowgill, French Gardens, and Jayson knew of the provisions of the Utah bankruptcy court's confirmed plan. They knew that the order granting Manhattan the right to foreclose was res judicata. Mr. Cowgill and Jayson knew that neither French Gardens nor Wrap-Around Associates could form a successful reorganization plan because the sole asset of each was its interest in the Apartments.

Bankruptcy Rule 9011 states in pertinent part:

The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation ... if a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both,

an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Rule 9011 is a restatement of Rule 11 of the Federal Rules of Civil Procedure. This standard is higher than the subjective good faith formula of prior law. *Davis v. McGraw-Edison Company,* 765 F.2d 494 (5th Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985).

These rules impose an affirmative duty on a party not to file a petition for any improper purpose; they impose an affirmative duty on an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. *See, Eastway, supra,* for a discussion of the history of Rule 11. As evidenced by the imperative verb, this court has a duty to impose sanctions on an attorney or party who signs a document in violation of this rule.

As a general proposition a court must determine whether litigation is being pursued in good faith by considering all of the facts and circumstances before it. *In re Kinney,* 51 B.R. 840 (Bkrtcy C.D.Cal.1985); *In re Thirtieth Place, Inc.,* 30 B.R. 503 (Bkrtcy.App.1983).

■ In a Chapter 11 filing good faith requires that the debtor have a reasonable expectation of reorganization. *In re Kinney, supra; In re Whitten,* 11 B.R. 333 (Bkrtcy.D.C.1981). Numerous bankruptcy courts have found that the hope that some future purchaser may appear with a sufficiently substantial offer to support a plan of reorganization does not an effective reorganization make. *See, In re Terra Mar Associates,* 3 B.R. 462 (Bkrtcy.Conn.1980); *In re Hutton/Johnson Co., Inc.,* 6 B.R. 855 (Bkrtcy.S.D.N.Y.1980); *In re Riviera Inn of Wallingford, Inc.,* 7 B.R. 725 (Bkrtcy.Conn.1980); *In re Clark Technical Associates, Ltd.,* 9 B.R. 738 (Bkrtcy.Conn. 1981); *In re St. Peter's School,* 16 B.R. 404 (Bkrtcy.S.D.N.Y.1982); *In re Boca Development Associates,* 21 B.R. 624 (Bkrtcy.S. D.N.Y.1982).

■ The filing of a petition under the Code solely to forestall a secured creditor from exercising foreclosure rights is an abuse of the bankruptcy code for which sanctions may be and should be imposed. *In re Gary,* 38 B.R. 675 (D.Md.1984); *In re Johnson,* 24 B.R. 832 (Bkrtcy E.D.Pa.1982); *In re Whitten, supra.*

■ Jayson used the automatic stay of 11 U.S.C. § 362 hoping to persuade either the Texas or the New York Court to reverse the Utah court's order permitting Manhattan to foreclose on the Apartments or to obtain bargaining leverage by stalling. Jayson hoped to convince the courts that an unidentified purchaser whose credit-worthiness was unknown would pay a commercially unrealistic sum for the Apartments. Jayson certified that the petition on behalf of French Gardens was well grounded in fact and was warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. Because Jayson knew of the Confirmed Plan and knew neither French Gardens nor Wrap-Around Associates could reorganize, Jayson is liable for sanctions under Bankruptcy Rule 9011 for the filing of the French Gardens and the Wrap-Around Associates' petitions.

■ Mr. Cowgill knew or should have known that there was no reason to continue the stay since reorganization was impossible, that Manhattan would not be protected and that Manhattan was suffering continuing injury defraying expenses at a rate of approximately $40,000 per month. He, too, is liable for sanctions under Rule 9011 for failing to make reasonable inquiry to support his certification that the petition for relief was well-grounded in fact and was warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

28 U.S.C. § 1927 provides as follows: Any attorney or other person admitted to conduct cases in any court in the United States or any Territory thereof who so

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees incurred because of such conduct.

§ 1927 is a weapon which the court may use in order to protect the judicial process from abuse to punish those who have abused it, and to provide relief for the party who has had to contend with the sanctioned party's multiple litigation. *In re Trust Deed Center, Inc.*, 36 B.R. 846 (Bkrtcy.C.D.Cal.1984). The sanctions to be imposed are thus, not only proper, but necessary in order to protect the integrity of the Bankruptcy Code and the judicial process. *Id.*

■ The filing of a bankruptcy petition solely to forestall a secured creditor from exercising foreclosure rights and without any intent of completing a plan of reorganization is a violation of 28 U.S.C. § 1927. *In re Johnson*, 24 B.R. 832 (Bkrtcy.E.D.Pa. 1982). *See also, In re Bayport Equities Corp.*, 36 B.R. 575 (Bkrtcy C.D.Cal.1983).

The court in *In re Villareal*, 46 B.R. 284 (Bkrtcy C.D.Cal.1984), was faced with a debtor who filed multiple bankruptcy petitions for the sole purpose of invoking the automatic stay of 11 U.S.C. § 362. That court imposed sanctions against the attorney and stated that the involvement of attorneys in this improper practice presents a particularly serious problem for the judicial process. As officers of the court, counsel owe a duty to the judicial system not to abuse it. *Id.*

■ It is well settled that this court has inherent authority to assess attorneys' fees and expenses against counsel who willfully abuse judicial processes. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Section 1927 and Rules 11 and 9011 provide additional bases for awarding sanctions against attorneys who file pleadings and motions for improper purposes and whose conduct thereby unreasonably and vexatiously mul-

tiplies matters before the court. *In re Perez*, 43 B.R. 530 (Bkrtcy.S.D.Tex.1984).

There has been an abuse of the bankruptcy system, violation of court rules, bad faith filings and sanctions should be imposed.[1]

■ Mr. Cowgill did not file the Houston Chapter 11 case in good faith, but merely to prevent Manhattan from foreclosing on the Apartments. Mr. Cowgill's conduct unreasonably and vexatiously multiplied proceedings before the court. The expenses incurred by Manhattan in the prosecution of its rights in the Houston Chapter 11 case were "excess expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Mr. Cowgill abused the judicial process which subjects him to the authority of this court to assess costs including attorneys' fees and expenses against him.

The issue of damages and the apportionment thereof will be heard on April 22, 1986, at 2:00 P.M. in Room 9612.

The foregoing contains the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52 made applicable under Bankruptcy Rule 7052. The court has drawn upon those proposed by the prevailing party.

The court is fully aware that the trial court may not blindly accept the proposed findings of fact and conclusions of law of the prevailing party. *United States v. El Paso Natural Gas*, 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

However, when the prevailing parties' proposed findings are consistent with the evidence and the conclusions are agreeable to the state of the law, it is entirely proper for the court to adopt their substance.

It is so ordered. Let judgment enter accordingly.

---

1. *See*, S.M. Kassin, *An Empirical Study of Rule*    *11 Sanctions*, (Federal Judiciary Center 1985).