In re BUY–N–SAVE, CASH & CARRY, INC., Plaintiffs,

v.

UNDERWRITERS INSURANCE CO., Defendant.

Bankruptcy No. 84 B 20532.
Adv. No. 85ADV.6023.

United States Bankruptcy Court, S.D. New York.

Jan. 13, 1986.

Bigham, Englar, Jones & Houston, New York City, for Underwriters Ins. Co.; James R. Martino, of counsel.

Buonomo & Thaler, Bronx, N.Y., for Buy-N-Save, Cash & Carry, Inc.

### DECISION ON MOTION FOR AN ORDER AND JUDGMENT FIXING AND DETERMINING INTEREST

HOWARD SCHWARTZBERG, Bankruptcy Judge.

BUY–N–SAVE, CASH & CARRY, INC., ("Buy-N-Save"), a debtor in this court, has moved for a determination of statutory interest on a contractual sum that it claims is due it pursuant to an order of this court dated July 3, 1985. The order settled an adversary action arising out of a pre-petition fire on the debtor's premises and the nonpayment by Underwriters Insurance Company ("Underwriters") under a policy of insurance issued by it to Buy-N-Save. Underwriters denies that any interest is due Buy-N-Save and has cross-moved for costs and attorneys' fees asserting that the debtor's motion was frivolously brought and is unwarranted in fact or law.

In its brief which was submitted after the hearing of the motion, Buy-N-Save asserted as a new ground the contention that the order was, in reality, a money judgment of this court which should bear statutory pre-judgment and post-judgment interest. Underwriters has opposed this ground as well.

### FACTS

1. Buy-N-Save operated a retail grocery store in Jefferson Valley, New York.

2. On October 24, 1984 the building was severely damaged in a fire and inventory contained in the store was destroyed. A proof of loss was subsequently filed by the debtor. However, insurance coverage was denied by Underwriters.

3. On December 26, 1984 the debtor filed a voluntary petition for a reorganization under Chapter 11 of the Bankruptcy Code.

4. On March 27, 1985 the debtor served its complaint in this adversary action against Underwriters seeking payment on its policy of insurance in the amount of $500,000.00 for fire damage and $120,000.00 in lost earnings (the limits of the policy). No interest of any kind was sought. Issue was joined on April 17, 1985.

5. On June 26, 1985 a trial was commenced in this court on the parties' stipulation pursuant to 28 U.S.C. § 157(c)(2) that this non-core matter be heard on consent of the parties, who waived the right to a trial *de novo* on appeal.

6. On the same day, and before the case proceeded to the hearing of evidence, the parties discontinued the action by a stipulation entered into in open court settling all claims of the debtor against Underwriters for $256,187.00.

7. The stipulation was memorialized in an order of this court dated July 3, 1985 which was subscribed by the attorneys for the parties and entered the same day.[1]

8. Nothing further appears to have been done regarding the payment under

---

1. The decretal paragraph of the Order reads as follows:

> ORDERED, ADJUDGED, AND DECREED that the aforementioned action is settled for the sum of Two Hundred Fifty-Six Thousand One Hundred Eighty-Seven and no/100 ($256,187.00) Dollars, to be paid by Underwriters. That Underwriters shall receive a general release from Buy-N-Save upon payment of the said $256,187 by check payable to BUONOMO & THALER as attorneys for the debtor which the attorneys are ordered to hold in an interest-bearing account, insured by an agency of the United States of America,

subject to the further order of this Court, relative to any claims of creditors and the public adjuster.

Dated July 3, 1985
   s/ Howard Schwartzberg
          J.B.C.
AGREED AND CONSENTED TO:
BUONOMO & THALER
by s/ Robert Thaler
    Robert Thaler
BIGHAM ENGLAR JONES & HOUSTON
by s/ James J. Taylor
    James J. Taylor

the order until an inquiry from an insurance adjuster was received by Underwriters on August 29, 1985. Underwriters' counsel then contacted counsel for Buy-N-Save and requested that a release of Underwriters be sent them before they would send the settlement check (under the impression that this was the mandate of the settlement offer).

9. On September 17, 1985 counsel for Buy-N-Save mailed a general release to Underwriters. The release was dated September 10, 1985.

10. On October 10, 1985, counsel for Underwriters forwarded a check for $256,-187.00 to counsel for Buy-N-Save.

11. In a letter dated November 1, 1985, counsel for Buy-N-Save acknowledged receipt of the check and made a demand for interest on the sum of $256,187.00 from October 24, 1984 (the time of the fire) to date.

12. On November 15, 1985 counsel for Buy-N-Save served this motion.

## DISCUSSION

It is without question that the July 3, 1985 order was not a judgment. Fed.R. Civ.P. 54(a), made applicable through Bankruptcy Rule 7054, declares:

> (a) Definition: Form. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of the pleadings, the report of a master, or the record of prior proceedings.

■ Aside from reciting the pleadings and an account of the proceedings in the adversary action, the July 3, 1985 order was not appealable. An order or decree is final for the purposes of appeal when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Parr v. United States*, 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956); *St. Louis, Iron Mountain and Southern Railroad Company v. Southern Express Company*, 108 U.S. 24, 2 S.Ct. 6, 27 L.Ed. 638 (1883). It would have been impossible for Buy-N-Save to have obtained a warrant of execution pursuant to Fed.R.Civ.P. 69 on an order that directed Underwriters to pay a check made payable to a particular party just as it would have been impossible to execute on a direction that Buy-N-Save give Underwriters a general release.

■ In any event, Buy-N-Save could have moved pursuant to Fed.R.Civ.P. 70, made applicable by Bankruptcy Rule 7070, to force compliance with the terms of the "judgment". If viewed as an order or decree, Buy-N-Save could have moved to punish Underwriters for contempt as a means of enforcing the court's order as a consent decree. *See McGoff v. Rapone*, 78 F.R.D. 8, 24 (E.D.Pa.1978). An agreement to settle a legal dispute is a contract. *Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C. Cir.1982). Hence, Buy-N-Save could have elected either to enforce the contract and attempt to recover damages for its breach or to go back and litigate on the merits. *Village of Kaktovik*, 689 F.2d at 231.

Buy-N-Save's motion is not decided on these grounds, however, since even if the order had been a judgment the general release given by Buy-N-Save to Underwriters bars any cause of action based on it, or any contract, tort or other colorable claim that was known or should have been known to it prior to the granting of the release. *Omaha Indemnity Company v. Johnson & Towers, Inc.*, 599 F.Supp. 215 (E.D.N.Y.1984).

■ A release which is given in settlement of litigation is a contract which is read in the clear light of its language and in the light of general contract law. *Mikropul Corporation v. Desimone & Chaplin-Airtech, Inc.*, 599 F.Supp. 940, 943 (S.D.N.Y.1984); *Omaha Indemnity Company v. Johnson & Towers, Inc.*, 599 F.Supp. at 219.

■ In this case Buy-N-Save has released Underwriters, its assigns and successors:

... of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, *contracts,* controversies, agreements, promises, variances, trespasses, damages, *judgments,* extents, executions, *claims* and demands whatsoever, in law or in equity, which against UNDERWRITERS INSURANCE CO. said BUY–N–SAVE, CASH & CARRY, INC. *ever had, now has or which it or its* successors hereinafter *can, shall or may have for,* upon *or by reason of any matter,* cause or thing whatsoever from the beginning of the world to the day of the date of these presents.

(emphasis added).

It is obvious on the face of the language of the release that Buy-N-Save gave up any claim or right of action against Underwriters arising out of the original subject matter of this controversy. The language is broad enough to include any claim for interest on the original value of the claim sued on as well as any claim to statutory interest on any "judgment" that might exist prior to the execution of the general release. *Aaron Ferer & Sons Limited v. Chase Manhattan Bank National Association,* 731 F.2d 112, 124 (2d Cir.1984) (general release given in bankruptcy litigation on conversion claim held to bar post bankruptcy action for misrepresentation and breach of fiduciary duties). The debtor had the able assistance of counsel when it executed and delivered the release and thus must be held to its clear terms. *Id; Bellefonte Reinsurance Company v. Argonaut Insurance Company,* 581 F.Supp. 241, 242–243 (S.D.N.Y.1984) aff'd 757 F.2d 523, 527 (2d Cir.1985); *Omaha Indemnity Company v. Johnson & Towers, Inc.,* 599 F.Supp. at 219.

There can be no argument to the effect that the release lacked consideration because the check was received after the release was given. No consideration need be given to support the validity of a written release executed in New York. N.Y.Gen. Oblig.Law § 15–303.

## CROSS MOTION FOR SANCTIONS

Underwriters has brought a cross motion for sanctions against Buy-N-Save for having brought a "frivolous and unwarranted motion".

The general rule in American jurisprudence is that the parties to litigation bear the expenses of their case even where successful. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 759, 100 S.Ct. 2455, 2460, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). An exception to the rule is bottomed on the principle that an award of counsel fees is warranted when the unsuccessful party has acted in bad faith or for oppressive reasons. *Alyeska,* 421 U.S. at 258–259, 95 S.Ct. at 1622–1623. Thus an award of costs and counsel fees is appropriate when the losing party's claims are "entirely without color" when it lacks any legal or factual basis. *Sierra Club v. United States Army Corps. of Engineers,* 776 F.2d 383, 390 (2d Cir.1985); *Puritan Insurance Company v. Eagle Steamship Company S.A.,* 779 F.2d 866, 873 (2d Cir.1985). A court must decide whether a reasonable attorney could have concluded that the facts supporting the claim might be established, and not whether such facts had been established. *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980). The test does not, however, end here. In addition to lacking any color the claim must also be advanced for an improper purpose, such as to harass, to cause delay, or to increase the cost of litigation. *Sierra Club v. United States Corps of Engineers,* 776 F.2d at 390. This exception to the American rule is codified in Bankruptcy Rule 9011(a). The definition of improper purpose is not defined there or in Fed.R.Civ.P. 11 upon which it is based and to that end the court may look to activity occurring before and after trial in order to evaluate whether the bringing of a colorless claim is improper. *Sierra Club v. United States,* 776 F.2d at 390 n. 5.

In light of the foregoing, the court finds that the claims advanced by Buy-N-Saves' counsel were entirely without color because he could not have reasonably believed that Buy-N-Save was entitled to interest after it delivered a general release to Underwriters.

In this context an attorney should know the effect of a general release. The attorney for Buy-N-Save who prepared and delivered the release also represented in open court that the matter was entirely settled for a specific sum. The order that counsel subscribed made no mention of interest. Thus, even if no release had been given, counsel must be held to the knowledge that there would be no pre-judgment interest in the settlement. On November 15, 1985, when he first made the motion to recover interest, counsel should have known that he had no claim for interest because by that time he had settled the case, delivered a general release to Underwriters and negotiated payment on the check which Underwriters gave in exchange. The motion for interest was made belatedly to vex and harass Underwriters in the hope that some additional funds could be recovered as a result of the groundless interest claim.

Accordingly, the court finds an award of attorneys' fees pursuant to Bankruptcy Rule 9011(a) is called for in this case.

Underwriters is entitled to recover attorneys' fees in the amount of $250, which sum is fair and reasonable, for having to appear in defense of the frivolous motion.

SETTLE ORDER on notice.